Filed 4/9/26  P. v. Kumar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAJESH KUMAR,<br><br>    Defendant and Appellant. | C102488<br><br>(Super. Ct. Nos. STK-CR-FE-2012-0007634 & SF120277A) |

Defendant Rajesh Kumar appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  Appointed counsel filed a brief requesting our independent review under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and *People v. Wende* (1979) 25 Cal.3d 436.  We requested supplemental briefing from the parties to address whether the trial court erred by incorrectly indicating in its order denying the petition that the jury was not instructed on felony murder, and, if

---

[1]  Undesignated statutory references are to the Penal Code.

1

so, whether the error was prejudicial. Having received supplemental briefing and reviewed the record—including the record from defendant's direct appeal[2]—we affirm.

## BACKGROUND

An information filed in 2012 charged defendant with the willful, deliberate, and premeditated murder of Valida Raynette Irvin (§ 187, subd. (a); count one) and false imprisonment of Irvin by violence (§ 236; count two). As to count one, the information alleged two special circumstances: the murder was committed while defendant was engaged in the crime of mayhem (§ 190.2, subd. (a)(17)(J)) and the murder was intentional and involved the infliction of torture (§ 190.2, subd. (a)(18)). As to count two, the information alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). (As to both counts, the information alleged defendant personally used a knife (§ 12022, subd. (b)(1)).

The facts of the underlying offense are described in our prior appellate opinion, which we summarize only to provide context. (*People v. Kumar*, *supra*, C074620.)

Defendant and the victim lived in the same apartment complex and had a friendly relationship, hanging out to smoke, drink, and watch movies together. On the evening of April 30, 2012, defendant's neighbors heard a woman's voice screaming for help. Surveillance video showed a person backing a car up to defendant's apartment, driving to a Dumpster, and walking around to the trunk. Around the same time, a witness in an apartment upstairs from defendant's apartment heard a car alarm going off and saw defendant running around trying to turn off the alarm of a car parked with the trunk facing defendant's apartment.

---

[2] We granted defendant's request to incorporate by reference the record in *People v. Kumar* (Aug. 16, 2019, C074620) (nonpub. opn.).

2

The victim's body was found by a Dumpster at the apartment complex. An autopsy determined that the victim suffered traumatic injuries all over her body, including a slashed throat.

Officers searching defendant's apartment smelled a strong odor of bleach and found latex gloves with blood on them that matched the victim's DNA, clothes with blood on them in a hamper, a carpet that had been cleaned with bleach but tested positive for blood, and two knives that DNA testing determined had the victim's blood on the blade and defendant's blood on the handle. Officers also found jewelry, including a pendant with the initial "R" for Raynette identified as belonging to Irvin by her sister. Irvin's sister also testified that Irvin had recently collected their deceased father's coin collection, which she vowed never to part with. In defendant's apartment, officers found old coins in a backpack and a bag of coins that Irvin's sister said she had seen in Irvin's apartment.

Detectives also searched Irvin's apartment, which appeared to have been ransacked. Items from the closet were thrown on the floor and the bed. Jewelry boxes were opened and emptied on the bed. A purse had been emptied, and everything was strewn about.

In defendant's account of the events, Irvin knew he sold things at the flea market. She gave him jewelry and old coins to sell there, and they were to split the proceeds. Irvin also gave defendant her pendant to have it fixed at the flea market. She agreed to give defendant a ride to the market. At Irvin's suggestion, they went to her car to see if the boxes would fit and then went back to defendant's apartment to watch a movie. While defendant and Irvin were watching a movie, her boyfriend "Mike" came in, got in a dispute with Irvin, and killed her. Then the boyfriend forced defendant to help dispose of Irvin's body. Defendant attempted to clean up his apartment because he thought he would be accused of the crime. (*People v. Kumar*, *supra*, C074620.)

3

The jury found defendant guilty of first degree murder. The jury further found true the torture-murder special circumstance and that defendant personally used a knife in the murder. The trial court sentenced defendant to life without parole in state prison, plus one year for the weapon enhancement. The court imposed various fines and fees, ordered victim restitution, and awarded 482 days of presentence custody credit.

This court affirmed the judgment save for striking the parole revocation fine. (*People v. Kumar, supra*, C074620.)

In 2023, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6). The trial court appointed counsel for defendant and scheduled a hearing. The People filed a response to the petition, attaching our opinion on direct appeal and arguing the evidence was overwhelming that defendant was the sole perpetrator of premeditated murder, and, in finding true the special circumstance of torture, the jury necessarily found defendant intended to kill the victim and was the actual killer. Defendant did not file a reply.

In October 2024, the trial court conducted a prima facie hearing on defendant's petition for resentencing and took the matter under submission. In a written order, the court denied the petition, stating in relevant part:

"A review of the evidence is set forth in both the Appellate Court's opinion and in Respondent's Informal Response to this petition. Suffice it to say, this was a lengthy trial involving a plethora of witnesses, DNA, defendant's testimony, etc. Most salient is the presence of bloody latex gloves in the defendant's bedroom. Items of the victim's property also were found in the defendant's bedroom. A double-edged knife in the defendant's dishwasher also contained the victim's DNA.

"A review of this case indicates that neither the felony murder theory nor the natural/probable consequences doctrine were ever involved. From inception the prosecution solely was based on Petitioner being the one and only murderer of the victim.

As such, the jury instructions addressed only the law of homicide requiring malice. Therefore, as Respondent points out, Petitioner is ineligible for relief on this petition."

Defendant filed a timely notice of appeal.

On appeal, we noted that, contrary to the trial court's order, the People acknowledged in their response to defendant's petition that "felony murder was presented as an alternative theory of murder in the first degree . . . ." Having granted defendant's request to incorporate by reference the record from defendant's direct appeal, we reviewed the jury instructions from defendant's trial.[3]

The trial court instructed the jury that the People prosecuted defendant for first degree murder under three theories: premeditated murder, murder by torture, and felony murder. The court told the jury that it need not agree on the theory, but if it was solely felony murder, jurors must agree on the felony.

We requested supplemental briefing from counsel for defendant and the People addressing whether the trial court erred in denying defendant's petition for resentencing at the prima facie stage because the jury was instructed on felony murder in the underlying trial as an alternative theory of murder, and, to the extent the trial court erred, whether the error was prejudicial.

Defense counsel filed a supplemental brief arguing that the trial court: (1) erred by engaging in factfinding and considering facts from our opinion on direct appeal; (2) incorrectly found that the prosecution had not relied on a felony-murder theory at defendant's trial; and (3) the trial court's errors were prejudicial because the record of conviction demonstrated defendant was prosecuted under a felony-murder theory, thereby meeting his burden to establish a prima facie case.

---

[3] There is no indication in the record of the petition proceedings that the trial court reviewed the jury instructions.

The People argue that the jury's true finding on the torture-murder special circumstance established express malice, i.e., that defendant intended to kill Irvin, thereby rendering defendant ineligible for resentencing even though the jury was instructed on felony murder. The People further argue that the record of conviction— including the evidence, arguments of counsel, jury instructions, and jury verdicts— showed the jury found that defendant was the actual killer, and as such, ineligible for relief under section 1172.6. The People maintain that, assuming the trial court erred, defendant suffered no prejudice because the record of conviction showed defendant intended to kill the victim, actually killed the victim, and therefore was ineligible for relief as a matter of law.

DISCUSSION

I

Appointed counsel's initial brief asked this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231-232; *People v. Wende*, *supra*, 25 Cal.3d 436.) Counsel and this court advised defendant of his right to file a supplemental brief within 30 days after the opening brief was filed.

In *Wende*, our state Supreme Court held that an appellate court must review the entire record in direct appeals where appointed counsel submits a brief raising no specific issues or describing the appeal as frivolous. (*Delgadillo*, *supra*, 14 Cal.5th at p. 221.) This procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Ibid.*)

In *Delgadillo*, our state Supreme Court held that the *Wende* procedure does not apply to a trial court's order denying a petition for postconviction relief under section 1172.6. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 221-222.) In such cases, when a defendant files a supplemental brief, "the Court of Appeal is required to evaluate the specific

6

arguments presented in that brief and to issue a written opinion." (*Id.* at p. 232.) The court is not required to conduct an "independent review of the entire record to identify unraised issues," although it has discretion to do so. (*Ibid.*)

Defendant has filed a supplemental brief in propria persona. Defendant claims only that he should not have been sentenced to life without parole, because Irvin's boyfriend murdered her, and defendant's role was limited to attempting to conceal evidence by removing her body from his apartment. Defendant argues he never admitted to murdering Irvin but only admitted his participation in concealing evidence, which does not warrant summary denial of a resentencing petition if he was not the actual killer and could have been convicted under an invalid theory. This argument essentially reiterates defendant's defense the jury rejected.

As numerous courts have held, a resentencing petition is not an opportunity for a defendant to relitigate the jury's factual findings. (E.g., *People v. Strong* (2022) 13 Cal.5th 698, 713 [resentencing under § 1172.6 involves "prospective relief from a murder conviction that was presumptively valid at the time," not the correction of "errors in past factfinding"]; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [the purpose of § 1172.6 " 'is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved' "]; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458 ["Appellant cannot use a section 1172.6 resentencing hearing to relitigate facts already determined, whether by plea, admission, or verdict"].)

Like the high court in *Delgadillo*, however, we exercised our discretion to review the record, determined the jury was instructed on felony murder, and requested supplemental briefing from counsel for the parties. We next consider the arguments raised by counsel.

Defendant's counsel contends that, because the jury was instructed on felony murder, defendant has made a prima facie case under section 1172.6, and the trial court prejudicially erred in denying his petition at the prima facie stage. The People argue that defendant is not eligible for section 1172.6 relief as a matter of law, because the jury instructions, verdicts, evidence, and arguments of counsel establish that the jury necessarily found that defendant intended to kill the victim and was the actual killer. We agree that the jury instructions and verdicts establish that defendant is ineligible for resentencing under section 1172.6.

*Relevant Jury Instructions and Verdicts*

The jury was instructed on the elements of felony murder with CALCRIM No. 540A in relevant part: "To prove the defendant guilty of first degree murder under the theory of Felony Murder, the People must prove: [¶] 1. The defendant committed or attempted to commit Burglary by Theft or Attempted Rape/Rape or Robbery: [¶] 2. The defendant intended to commit Burglary by Theft or Attempted Rape/Rape or Robbery; AND [¶] 3. While committing or attempting to commit Burglary by Theft or Attempted Rape/Rape or Robbery, the defendant caused the death of the alleged victim, Ms. Irvin. [¶] A person may be guilty of felony murder even if the killing was unintentional, accidental or negligent."

The trial court instructed the jury on the special circumstance of murder with torture with CALCRIM No. 733 in relevant part: "The defendant is also charged with the special circumstance of murder involving the infliction of torture. [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. The defendant intended to kill Raynette Irving; [¶] 2. The defendant also intended to inflict extreme physical pain and suffering on Raynette Irvin while the person was still alive; [¶] 3. The defendant intended to inflict such pain and suffering on Raynette Irvin for the calculated purpose of revenge, extortion, persuasion, or any other sadistic reason; [¶] AND [¶]

The defendant did an act involving the infliction of extreme physical pain and suffering on Raynette Irvin."

Regarding the allegation of personal use of a weapon, the court instructed the jury in relevant part: "If you find the defendant guilty of the crime charged in Count 1, Murder, you must then decide whether the People have proved the additional allegation that the defendant personally used a deadly or dangerous weapon, specifically a knife, in the commission of that crime."

After finding defendant guilty of first degree murder, the jury found the torture-murder special circumstance true.

The jury also found true "that in the murder of [Irvin], the defendant . . . did personally use a weapon . . . ."

*Legal Background*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), effective January 1, 2019, made ameliorative changes to California's homicide law. As part of these changes, the legislation amended sections 188 and 189 to significantly limit the scope of the felony-murder rule and eliminate second degree murder liability predicated on the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime. (§ 1172.6, subd. (a)(1); *People v. Gentile* (2020) 10 Cal.5th 830, 842; *People v. Patton* (2025) 17 Cal.5th 549, 558.)

As relevant here, Senate Bill No. 1437 amended section 189, subdivision (e) as follows: "A participant in the perpetration . . . of a felony listed in subdivision (a) in which death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. [¶] The person was not the actual killer, but, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] The person was a major

9

participant in the underlying felony and acted with reckless indifference to human life  . . ."

Prior to this amendment, "the felony murder rule provide[d] an exception to the malice requirement for murder.  [Citation.]  The rule impute[d] the requisite malice to those who commit a homicide during the perpetration of a felony inherently dangerous to human life.  [Citation.]  The requisite mental state [was] simply the specific intent to commit the underlying felony.  [Citation.]  The purpose of the rule [was] to deter criminals from killing by holding them strictly responsible for deaths that occur during the perpetration (or attempted perpetration) of an inherently dangerous felony, regardless of whether the killing was done by the perpetrator or an accomplice, and regardless of whether the killing was intentional, negligent, or accidental."  (*People v. Vang* (2022) 82 Cal.App.5th 64, 81.)

Senate Bill No. 1437 allows those convicted under a now-invalid theory of murder to petition the trial court to vacate the conviction and resentence the defendant. (§ 1172.6, subd. (a).)  If the trial court finds that a petitioning defendant has made a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subds. (c) & (d).)

"[T]he prima facie inquiry under [section 1172.6] subdivision (c) is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her [or their] factual allegations were proved." ' " (*Ibid*.)  The court may rely on the record of conviction in determining whether defendant has made a prima facie showing, and " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.; see *People v. Harden* (2022) 81 Cal.App.5th 45, 52 [it is appropriate for a court to deny a

defendant's resentencing petition at the prima facie stage if the record shows the defendant is ineligible for relief as a matter of law].)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972.)  In addition, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022) amended section 1172.6 to allow the court to consider the "procedural history" recited in an appellate opinion at an evidentiary hearing, which courts have interpreted to mean that the factual summary of an appellate opinion may not be considered at the prima facie or evidentiary hearing stage to determine a petitioner's eligibility.  (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1237-1238.)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage."  (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200; *People v. Anaya* (2025) 117 Cal.App.5th 615, 620.)

*Analysis*

We may examine the jury instructions and "the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the allegations of [defendant's] petition."  (*People v. Curiel* (2023) 15 Cal.5th 433, 465.)  We conclude that in this case they do.  Without the need to weigh conflicting evidence or make credibility determinations, the verdicts and the jury instructions establish as a matter of law that the jury convicted defendant as the actual killer of Irvin.  (§ 189, subd. (e)(2).)

Although defendant's jury was instructed on felony murder, the instructions on the torture-murder special circumstance and use of a knife required the jury to find that defendant was the actual killer of Irvin.  The torture-murder special circumstance instruction required the jury to find that defendant personally harbored an intent to kill Irvin.  (*People v. Jennings* (2010) 50 Cal.4th 616, 647 ["Proof of a murder committed

11

under the torture-murder special circumstance requires (1) proof of first degree murder; (2) proof that the defendant intended to kill and torture the victim, and (3) proof of the infliction of an extremely painful act upon a living victim"].) The weapon enhancement instruction required the jury to find that defendant personally used a knife "in the murder of" Irvin. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (denying § 1172.6 petition where "the jury implicitly found Cornelius was the 'actual killer'," because it convicted him of murder and "found true that he personally and intentionally used a firearm to commit the crime"].) In finding true the torture-murder special circumstance and weapon enhancement, the jury found defendant intended to kill Irvin and used a knife in committing first degree murder. We conclude it was impossible for the jury to make these findings without finding that defendant was the actual killer of Irvin. (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1247-1248*;* see also *People v. Harden* (2022) 81 Cal.App.5th 45, 55-56.)

Significantly, the instructions on all three theories of first degree murder required the People to prove that defendant caused the death of Irvin. There was no "amplifying instruction" further explaining causation to permit the jury to conclude that "caused the death" meant anything more than that defendant inflicted the injuries, including a slashed throat, that killed the victim. (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1246.)

In addition, defendant offered an identity defense to the murder charge, claiming that "Mike" killed Irvin and defendant only helped conceal the murder, but there was no aiding and abetting instruction given to allow the jury to convict defendant as an accomplice. (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1247.) To the contrary, defendant was charged as the sole perpetrator of Irvin's murder. The theories presented to the jury were that defendant alone killed Irvin (the prosecution's theory) or that Irvin's boyfriend Mike killed her and defendant only helped dispose of the body (defendant's theory). Accordingly, in finding defendant guilty as charged, the jury necessarily rejected defendant's theory.

12

In light of the instructions, verdicts, and findings, we conclude that the jury found defendant to be Irvin's actual killer in convicting him of her murder, and thus he is ineligible for section 1172.6 relief as a matter of law. Given our conclusion, the trial court's erroneous statement that felony murder was not involved in the underlying trial was harmless.[4] (*People v. Beaudreaux*, *supra*, 100 Cal.App.5th at p. 1248.)

## DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1172.6 is affirmed.

/s/
WISEMAN, J.[*]

We concur:

/s/
MAURO, Acting P. J.

/s/
DUARTE, J.

---

[4] For the same reason, we need not address defendant's claim that the trial court improperly engaged in factfinding and relied on facts from our opinion on direct appeal.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.